UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

STEVEN J. CAMPBELL                                                                                    PLAINTIFF

v.                                         Civil No. 6:14-CV-06135-PKH-BAB

SHERIFF JASON WATSON (Clark County                                                         DEFENDANTS
Detention Center), JAIL ADMINISTRATOR
LARRY CAIN (Clark County Detention
Center), BEN CHANDLER (Clark County
Detention Center), and JAMES LANGLEY
(formerly Clark County Detention Center)

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Steven J. Campbell, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable P. K. Holmes, III, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 41. A hearing was held on September 21, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion.[1] ECF No. 44. After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

**1.    BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Ouachita River Unit. Plaintiff alleges he was denied medication and diet for his diabetes and hypertension by Defendants while incarcerated in the Clark County Detention Center. He also

---

[1] As this was a sworn oral response to a Motion for Summary Judgment the Court did not permit cross examination of Plaintiff.

1

alleges he was denied the opportunity to grieve these issues by Defendant Chandler.  ECF No. 1.  Plaintiff alleges that as a result of this denial, he was admitted in serious condition to the Baptist Health Medical Center on March 7, 2014, with diabetic ketoacidosis and dehydration.  ECF No. 1, p. 8.

Plaintiff seeks a permanent injunction requiring Defendants Watson and Cain to make sure there are appropriate medical supplies, testing, and diets for inmates.  He further seeks joint and several compensatory damages in the amount of $3 million dollars, punitive damages in the amount of $250,000 against each Defendant, costs of suit, and any additional costs.  ECF No. 1, pp. 13-14.

Defendants filed their Summary Judgment Motion on August 8, 2016.  ECF No. 41.

Plaintiff appeared by videoconference and gave a sworn statement in response to the Summary Judgment Motion on September 21, 2016.  At the end of the hearing, Plaintiff was given until November 1, 2016, to submit exhibits to support his case.  Defendants were given one week after Plaintiff filed his additional documentation to make any desired response.  Plaintiff filed two documents on November 4, 2016, one entitled Objection to Summary Judgment (ECF No. 45), and Statement of Disputed Facts.  ECF No. 46.  No exhibits were attached to Document 45.  Plaintiff attached several of Defendants' exhibits to Document 46, with large X's drawn through the booking sheet, Inmate Release Report, and the Clark County Detainee's Jail Record.  Defendants filed no response to these documents.

At the hearing, Plaintiff was asked to testify as to his claim.  Plaintiff stated he was booked in by Defendant Chandler, who asked him health questions.  Plaintiff testified he told Chandler he had been without insulin for a couple of days due to lack of money.  He stated Chandler "just

handed him a bunch of papers" to sign and he did not have time to look over them. Plaintiff testified he asked to make a phone call to his mother and that request was denied. Chandler told him he was busy, and Plaintiff could make a phone call later. Plaintiff was never permitted to make a phone call.

He was placed in a cell and assigned the top bunk. He did not feel well because he had been without medication for several days. In the morning, he pushed the buzzer and asked to make a call again, and was denied. He also asked if he could move to the lower bunk in the next cell because he was dizzy and was nervous about being on the top bunk due to his health. This request was granted. He laid down, but it did not help. He pushed the buzzer again and asked for medical help. Defendant Chandler came in and was upset because he was in the next cell. Plaintiff had vomited in the toilet several times at this point. Chandler told him to go back to his original cell. Chandler stated he was lying about being ill, and put him in lockdown as a result. Plaintiff asked for a phone call again, and Chandler ignored him. Defendant Langley was standing in the doorway and watching this interaction. After this interaction with Chandler and Langley, no one came or responded when he pushed the buzzer.

Plaintiff then asked Trustee Albert for help, and Albert said he would get some. Plaintiff fell and blacked out. When he awoke, he was lying in a puddle of vomit on the floor. Defendant Langley came in at this point and stated "So this is how we are going to do it?" Plaintiff stated this comment was in reference to a prior date of incarceration. Langley had Trustee Smiley pick him up and put him in bed. Plaintiff was still vomiting; he was covered in vomit. Plaintiff woke up to bright lights in the hospital. He saw masks and thought he was dying. He did not remember going to the hospital. He woke up with IV's and a catheter. There was an ADC officer next to his

3

bed, not a Clark County officer. Plaintiff believes it was his second day of incarceration when he was placed in the bed by Trustee Smiley.

Plaintiff was asked why he did not file a proper grievance with Clark County Jail. Plaintiff testified he asked for a grievance form and was told he had no grievable issues. He also testified he asked for a sick call several times, and was either ignored or told he did not need one. The Court asked if he specifically asked for a grievance form and was told he had no grievable issues. Plaintiff answered "yes."

Plaintiff was asked why he told Defendant Chandler he was not taking any medication at booking. He testified his exact words were "I am not on meds at this time because I couldn't afford them." Plaintiff testified that he also told Chandler he was supposed to be taking insulin and needed to make a phone call.

Plaintiff was then asked about his interaction with Sheriff Watson. Plaintiff stated he had been in Clark County jail on two prior occasions and was in the hospital for the same thing as this incident. He stated he felt the Sheriff had a duty to have adequate medical supplies, and for the second time this year, did not have them. Plaintiff was asked if he had any direct contact with the sheriff for this incident. Plaintiff testified "No, not this time."

Plaintiff was asked how he knew there were no medical supplies. He testified he had asked if they had insulin, and was told they did not; inmates had to bring their insulin with them. Defendant Larry Cain was the individual who told him there was no insulin.

Plaintiff was asked if it was his contention that it was the policy or custom of Clark County Detention Center to deny medical care. Plaintiff testified it was not his contention. His three cases were the only ones he knew of.

Plaintiff was asked about his family doctor. He testified he did not have one in Arkadelphia, but he did have one in Amity. He stated his doctor's name was difficult to pronounce, and he did not know how to spell it, but he was the only doctor in Amity. He testified he had stated this information to Defendant Chandler when he was booked into the facility.

Defendants' counsel was given the opportunity to state a response and rested upon their written submissions.

In his Statement of Disputed Facts (ECF No. 46), Plaintiff points out that his Classification Report at booking noted he had been hospitalized about ten times in the previous year for diabetes. ECF No. 46, pp. 2, 13. In his Objection to Summary Judgment (ECF No. 45), Plaintiff states he had been in the Clark County Detention Center approximately three times prior to the current incident. In one instance he was released from jail due to his diabetes, in another he was "dropped off at the hospital and left there." ECF No. 45, p. 3. Plaintiff stated both time were at the direction of Sheriff Watson. Plaintiff also states Sheriff Watson had access to his booking records and therefore could have known he was diabetic and released previously. Plaintiff further states he provided sufficient information for the Sheriff, Jail Administrator, Jailers, and any other employees of Clark County Detention Center to be able to secure his medications. ECF No. 45, p. 3.

**2.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins.*

*Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.      DISCUSSION**

Defendants argue summary judgment should be granted for the following reasons: 1) Plaintiff failed to allege any official capacity claims; 2) Plaintiff's claims against Sheriff Watson are based solely on *respondeat superior*; 3) Plaintiff failed to exhaust his administrative remedies; and 4) Plaintiff failed to state a claim for denial of medical care. ECF No. 42.

**A.      Official Capacity Claims**

Plaintiff failed to state any official capacity claim against Clark County. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the

> entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir. 1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

When asked at the hearing, Plaintiff explicitly denied any contention that it was the policy or custom of Clark County Detention Center to deny medical care to inmates. He further testified that his cases were the only instances of denial of medical care of which he was aware. Plaintiff therefore failed to state any official capacity claims against Clark County.

### B.     Defendant Sheriff Watson

Plaintiff failed to state a claim against Sheriff Watson. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his

7

constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Sheriff Watson cannot be held liable merely because he holds a supervisory position at the Clark County Detention Center.

Plaintiff's claims against Sheriff Watson are based on previous interactions with Sheriff Watson and his supervisory position as Sheriff. Plaintiff was asked at the hearing if he had any direct contact with the sheriff for *this* incident. Plaintiff testified "No, not this time." Plaintiff therefore failed to state a claim against Sheriff Watson.

### C. Failure to Exhaust Administrative Remedies

Defendants argue Plaintiff's case must be dismissed because he failed to submit any grievances concerning the alleged denial of medical care. ECF No. 42, pp. 9-10.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, mandates exhaustion of available administrative remedies before an inmate files suit. The PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances," leaving it to the court below to determine in the first instance the sufficiency of the exhaustion in these cases. *Id.* at 219. To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal citation omitted). The Court stated, "[t]he level of detail necessary in a grievance to

8

comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or, (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)). "Available remedies are capable of use for the accomplishment of a purpose: immediately utilizable and accessible." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (internal quotations and modifications omitted).

In this case, Plaintiff testified he asked to file a grievance and was told he had no grievable issues by prison officials, who then refused to provide a grievance form. Plaintiff is therefore eligible for an exception to the PLRA exhaustion requirement because prison officials prevented him from utilizing the grievance procedure.

### D.    Denial of Medical Care: Chandler, Langley and Cain

Genuine issues of material fact remain as to whether Defendants Chandler, Langley, and Cain were deliberately indifferent to Plaintiff's objectively serious medical needs.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106

(1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Defendants do not dispute that diabetes is an objectively serious medical need. ECF No. 42, p. 7. The Classification report submitted as Defendants' Exhibit 3 clearly indicated Plaintiff's response that he had diabetes, and he had been hospitalized approximately ten times in the past year for that disease. ECF No. 42-3, p. 1. Although that same booking report shows Plaintiff

indicating he was not taking medication for his diabetes, and did not have a doctor, Plaintiff testified this was not a correct representation of his oral responses at booking. Instead, Plaintiff testified that he told Chandler he had been off his medication for several days due to lack of funds. He also testified he told Chandler he was seeing a doctor, he simply could not pronounce or spell his name. He did however, indicate he was the only doctor in Amity. Although Plaintiff signed the booking documents, he testified he was not given time to review them. He testified that Chandler was too busy to permit him to make a phone call concerning his medication. Plaintiff testified that Chandler told him he was lying about being ill, and made a comment referring to a prior health incident with Plaintiff in Clark County Detention Center. Thus, a material question of fact exists as to whether Defendants were aware that Plaintiff needed insulin for his diabetes.

Further, even assuming Defendants were not aware of his need for insulin, Plaintiff provided testimony indicating he was in clear physical distress obvious to a layperson, and that this distress was ignored. Specifically he indicated he was vomiting repeatedly and profusely and blacking out, at one point waking in a puddle of vomit. Yet when Plaintiff repeatedly requested medical help, he was told either that he did not need a medical request or his requests were simply ignored. He testified that he was repeatedly denied the opportunity to make a phone call to get his medication. Defendants provided no evidence of Plaintiff being taken to see a jail nurse or physician, or of receiving any medical care whatsoever in response to his objective physical symptoms. Further, when he awoke in the hospital, he was attended by an ADC officer, not a Clark County officer, permitting the inference he was suffering from an objectively serious illness, and was passed into ADC custody before he received any medical care.

Viewing all evidence and inferences in a light most favorable to the Plaintiff, genuine issues of material fact remain as to whether Defendants Chandler, Langley, and Cain were

11

deliberately indifferent to Plaintiff's objectively serious medical needs.

**4. CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 41) be **GRANTED in part** and **DENIED in part**. I recommend Plaintiff's Complaint against Defendant Sheriff Watson, as well as his official capacity claims against Clark County, be dismissed with prejudice. I further recommend Plaintiff's claim for denial of medical care against Defendants Chandler, Langley, and Cain remain for further consideration.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 5th day of January 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE